# UNITED STATES DISTRICT COURT

for the
**EASTERN DISTRICT OF WISCONSIN**

In the Matter of the Seizure of
<span>(Address or brief description of property or premises to be seized)</span>

ALL FUNDS ON DEPOSIT IN WELLS FARGO BANK        Case Number:   22-1830M(NJ)
ACCOUNT #9996562899, HELD IN THE NAME OF
BLACKOUT INVESTMENTS LLC

## WARRANT TO SEIZE PROPERTY SUBJECT TO FORFEITURE

TO:     **MATTHEW COOPER, a Task Force Officer assigned to the Drug Enforcement Administration, and any Authorized Officer of the United States**.

An application by a federal law enforcement officer or an attorney for the government requests that certain property be seized as being subject to forfeiture to the United States of America. The property is described as follows:

All funds on deposit in Wells Fargo Bank account #9996562899, held in the name of Blackout Investments LLC

I find that the affidavit and any recorded testimony establish probable cause to seize the property.

     **YOU ARE HEREBY COMMANDED** to search on or before    November 30     , 2022
                                                            *(not to exceed 14 days)*

         ❑ in the daytime – 6:00 a.m. to 10:00 p.m.     ☑ at any time in the day or night, as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must also give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

An officer present during the execution of the warrant must prepare, as required by law, an inventory of any property seized and the officer executing the warrant must promptly return this warrant and a copy of the inventory to United States Magistrate Judge Nancy Joseph.

         ❑ I find that immediate notification may have an adverse result listed in 18 U.S.C. §2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person, who, or whose property, will be searched or seized *(check the appropriate box)*    ❑ for _____ days. *(not to exceed 30)*
                                      ❑ until, the facts justifying, the later specific date of _____

Date and time issued   11/16 , 2022;    5:00 p.m.                   *Nancy Joseph*
                                                          *Judge's signature*

City and state: <u>Milwaukee, Wisconsin</u>          <u>THE HONORABLE NANCY JOSEPH</u>
                                                <u>United States Magistrate Judge</u>
                                                *Name & Title of Judicial Officer*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of:

Inventory of the property taken:

| **Certification** |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WISCONSIN

In the Matter of the Seizure of
(Address or brief description of property or premises to be seized)

ALL FUNDS ON DEPOSIT IN WELLS FARGO BANK
ACCOUNT #9996562899, HELD IN THE NAME OF
BLACKOUT INVESTMENTS LLC

Case Number: 22-1830M(NJ)

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, Matthew Cooper, being duly sworn depose and say:

I am a Task Force Officer assigned to the Drug Enforcement Administration, and have reason to believe that in the Eastern District of Wisconsin there is now certain property, namely, all funds on deposit in Wells Fargo Bank account #9996562899, held in the name of Blackout Investments LLC, that is civilly forfeitable under 21 U.S.C. § 881(a)(6) and criminally forfeitable under 21 U.S.C. § 853 as funds that constitute proceeds of trafficking in controlled substances or were used or intended to be used to facilitate the commission of a controlled substances offense, in violation of 21 U.S.C. § 841(a)(1), and which property is therefore also subject to seizure for purposes of civil forfeiture under 18 U.S.C. § 981(b) and 21 U.S.C. § 881(b), and for purposes of criminal forfeiture under 21 U.S.C. § 853(f).

The application is based on these facts:

     ✓ Continued on the attached sheet.

     ❑ Delayed notice of _____ days (give exact ending date if more than 30 days:_____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

MATTHEW
COOPER (Affiliate)

Digitally signed by MATTHEW
COOPER (Affiliate)
Date: 2022.11.16 14:30:35
-06'00'

Signature of Affiant

Matthew Cooper, DEA

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone and email.

11/16/22 @ 5:00 p.m.

Date and time issued

at Milwaukee, Wisconsin

City and State

Nancy Joseph, U.S. Magistrate Judge

Name & Title of Judicial Officer

Signature of Judicial Officer

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEIZURE WARRANT**

I, Matthew Cooper, being first duly sworn on oath, state that:

**Introduction**

1.      I make this affidavit in support of an application for a seizure warrant for **Wells Fargo Bank, Account # 9996562899, in the name of Blackout Investments LLC**, currently containing in excess of $74,000.

2.      For the reasons set forth below, I submit that there exists probable cause to believe that in excess of $74,000.00 in proceeds of the sales of controlled substances is currently located in **Wells Fargo Bank, Account # 9996562899, in the name of Blackout Investments LLC**, and the funds constitute proceeds of trafficking in controlled substances or were used or intended to be used to facilitate the commission of a controlled substances offense, in violation of 21 U.S.C. § 841(a)(1), and therefore are:

      a.  Subject to criminal and civil forfeiture under 21 U.S.C. §§ 853(a) and 881(a)(6), respectively; and

      b.  Subject to seizure for purposes of civil forfeiture under 18 U.S.C. § 981(b) and 21 U.S.C. § 881(b) and for purposes of criminal forfeiture under 21 U.S.C. § 853(f).

**Officer Background**

3.      I am employed as a Detective with the Milwaukee Police Department and have been a law enforcement officer for over 25 years.  I have been a Detective for over 19 years and have been assigned to conduct narcotics investigations for over 18 years.  I was previously assigned to the Vice Control Division (Narcotics) as a Police Officer for over 2 years.  I have been assigned to the High Intensity Drug Trafficking Area (HIDTA) for over 14 years.   I am also a Task Force

Officer with the United States Department of Justice, Drug Enforcement Administration (DEA), and have been since October, 2008. As such, I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

4.     I have participated in numerous complex narcotics investigations which involved violations of state and federal controlled substances laws and money laundering laws including Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 1956 and 1957, and other related offenses. I have had both formal training and have participated in numerous complex drug trafficking investigations, including ones using wiretaps. More specifically, my training and experience includes the following:

a.     I have utilized informants to investigate drug trafficking. Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States;

b.     I have also relied upon informants to obtain controlled substances from dealers, and have made undercover purchases of controlled substances;

c.     I have extensive experience conducting street surveillance of individuals engaged in drug trafficking. I have participated in the execution of numerous search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

d.     I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;

e.     I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded;

f.     I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations;

g.  I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

h.  I have been assigned to court-authorized wiretaps and have been trained to operate the equipment utilized to conduct such operations;

i.  I know that drug traffickers often put their telephones in nominee names in order to distance themselves from telephones that are utilized to facilitate drug trafficking; and

j.  I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials.

5.  All the information contained in this affidavit is derived from my personal knowledge and observations, from information provided by witnesses and other law enforcement officers, or from third-party records. I believe this information to be both reliable and credible. This information is provided for the limited purpose of establishing probable cause and is not a complete statement of all the facts related to this case.

### Statutory and Financial Background

### Fentanyl Trafficking and Cocaine Trafficking

6.  Title 21, United States Code, Section 812 (d)(2b)(6) codifies fentanyl as a Schedule II controlled substance. Title 21, United States Code, Section 812 (c)(2a)(4) codifies cocaine as a Schedule II controlled substance.

7.  Title 21, United States Code, Section 841(a) provides as follows:

It shall be unlawful for any person knowingly or intentionally-

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or

(2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.

**Facts Supporting Finding that Jonte MARSHALL Traffics in Fentanyl and Cocaine**

8.     The United States, including the Drug Enforcement Administration is conducting a criminal investigation into fentanyl trafficking by Jonte MARSHALL and the Jonte MARSHALL Drug Trafficking Organization, hereinafter referred to as the "Jonte Marshall DTO," in Wisconsin. I am familiar with the facts and circumstances regarding this investigation as a result of my personal participation in this investigation, and my review of: (a) reports prepared by, and information obtained from, other federal, state, and local law enforcement agents and officers, all of whom I believe to be truthful and reliable; and (b) financial records obtained via subpoena.

9.     From April 2019 through November 2020, case agents conducted eleven controlled buys of fentanyl from members of the Jonte MARSHALL DTO.  These controlled buys totaled approximately 900 grams of fentanyl and involved, at various times, Jonte MARSHALL, Corey Vance, Lemonda Ward, and Shomari Hooper.  Following one of these controlled buys, MARSHALL was observed depositing United States currency, suspected to be the pre-recorded buy money, to a bank account.  MARSHALL was also observed delivering the suspected fentanyl to Ward prior to several controlled purchases and meeting with Ward following controlled buys to receive the suspected pre-recorded buy money.

10.     On July 20, 2020, the Honorable Nancy Joseph, United States Magistrate Judge in the Eastern District of Wisconsin, signed warrants authorizing the search of (414) 779-1998, the phone used by Jonte MARSHALL, and (602) 703-0618, the phone used by Oscar RAMIREZ-RIVERA.  More specifically, the warrants directed AT&T and T-Mobile to provide information about the location of (414) 779-1998 and (602) 703-0618 for a period of 45 days.

11.     Case agents monitoring the location of (602) 703-0618 observed that RAMIREZ-RIVERA had been primarily in the Phoenix, Arizona area until July 31, 2020. On July 31, 2020, RAMIREZ-RIVERA travelled from Phoenix to Los Angeles, California.  From July 31, 2020, until

August 5, 2020, RAMIREZ-RIVERA remained in California and frequented the areas of Palmdale, California; Llano, California; and San Bernardino, California. On August 5, 2020, RAMIREZ-RIVERA returned to the Phoenix area. On Thursday, August 6, 2020, at 10:20 p.m., court-authorized positional information for (602) 703-0618 indicated that RAMIREZ-RIVERA was at the airport in Milwaukee, Wisconsin. RAMIREZ-RIVERA remained in the Milwaukee area and his phone was frequently observed at the same locations as MARSHALL's cellular phone.

12. On August 12, 2020, at 8:50 a.m., court-authorized positional information for (602) 703-0618 indicated that RAMIREZ-RIVERA's cellular phone was in close proximity to 7836 North Faulkner Road, Milwaukee, Wisconsin. This is the location of Schweiger and Baumann Trucking LLC, a business owned by Jonte MARSHALL. At 9:01 a.m., court-authorized positional information for (414) 779-1998, MARSHALL's cellular phone, indicated MARSHALL was also in that area. At 9:20 a.m. and 9:35 a.m., (602) 703-0618 was located in close proximity to MARSHALL's residence at 8320 West Mourning Dove Court, Mequon, Wisconsin (Target Location A). At 9:18 a.m. and 9:36 a.m., (414) 779-1998 remained near 7836 North Faulkner Road. At 9:50 a.m., (602) 703-0618 was again in the area of 7836 North Faulkner Road. At 10:05 a.m., (602) 703-0618 was located in the area of North 76th Street and West Brown Deer Road which is between MARSHALL's residence and 7836 North Faulkner Road. At 10:07 a.m., (414) 779-1998 was located near his residence. At 10:20 a.m., (602) 703-0618 was located near North 76th Street and West Bradley Road which is approximately 13 blocks east of 7836 North Faulkner Road.

13. At 10:25 a.m., case agents began to conduct surveillance at 7836 North Faulkner Road, Milwaukee, Wisconsin. At 10:25 a.m., case agents observed Jonte MARSHALL's black 2018 Cadillac Escalade, bearing Wisconsin license plates AGE-4015, parked in the southeast corner of the rear parking lot at that location. These license plates list to Blackout Investments LLC at 7836 North Faulkner Road, Milwaukee, Wisconsin. Jonte MARSHALL is the registered agent for

Blackout Investments LLC. Case agents also observed Jonte MARSHALL standing in the rear parking lot at that location. MARSHALL appeared to be taking a picture of a vehicle in a rear parking area. The vehicle could not be seen as it was parked between other large vehicles. Court-authorized positional information also confirmed that (414) 779-1998 was at that location at 10:25 a.m. Case agents established surveillance where they could observe vehicles coming and going from the business, but could not observe most of the rear parking lot.

14. At 10:35 a.m., court-authorized positional information for (602) 703-0618 indicated it was located near 7836 North Faulkner Road, Milwaukee, Wisconsin. At 10:39 a.m., case agents observed a gray 2016 Jeep Grand Cherokee, bearing California license plates 8ADB961, drive from the rear parking lot and turn south on North Faulkner Road. These license plates list to Carlos ESTRADA at 13841 Beech Street, Victorville, California 92392. This vehicle was not followed. At 10:41 a.m., (414) 779-1998 was still located near 7836 North Faulkner Road. At 10:48 a.m., case agents observed Jonte MARSHALL walk across the rear parking lot and enter the driver's seat of his Cadillac Escalade. MARSHALL drove the Escalade out of the parking lot and turned north on North Faulkner Road. Case agents attempted to locate MARSHALL's vehicle, but were unsuccessful.

15. At 10:49 a.m., court-authorized positional information for (602) 703-0618 indicated it was located near 7300 West Good Hope Road, Milwaukee, Wisconsin. Case agents went to that location in an attempt to locate RAMIREZ-RIVERA. At 10:58 a.m., case agents observed a commercial car carrier in the parking lot at approximately 7208 North 76th Street, Milwaukee, Wisconsin. Case agents observed a gray Jeep Grand Cherokee on the upper cargo area of the car carrier and confirmed that the license plate on the Jeep was the same license plate of the Jeep observed leaving 7836 North Faulkner Road. Case agents were unable to locate RAMIREZ-RIVERA at that location and then began to conduct surveillance of the car carrier and Jeep.

16.     Case agents maintained surveillance of the car carrier until it entered Interstate 94 eastbound toward Chicago, Illinois.  The car carrier was followed into Racine County, Wisconsin.  At 12:34 p.m., a Wisconsin State Patrol Inspector conducted a traffic stop of the car carrier for a safety inspection.  After the initial traffic stop, the car carrier was relocated to the Racine Safety Weight Enforcement Facility for an inspection.  The driver of the car carrier stated he had picked up all three of the vehicles on the car carrier from private parties in the Milwaukee area.  The driver had shipping information on his phone which indicated the Jeep Grand Cherokee was being transported to Hesperia, California.  The Inspector asked the driver to off-load the Jeep and one other vehicle so he could confirm the VIN numbers on each vehicle.  The driver agreed to do so.  A Wisconsin State Patrol Trooper then arrived on scene to assist the Inspector.  The Trooper deployed his K-9 partner around the Jeep and the other vehicle and the K-9 alerted to the odor of controlled substances emanating from the Jeep.  During a search of the Jeep, the Inspector and Trooper located an electronically-controlled compartment behind the rear passenger seat.  The compartment was observed to contain rubber-banded United States currency.  The Inspector and Trooper dismantled the compartment and removed a large amount of United States currency.  An official count later revealed that $508,140 in United States currency was located in the compartment.  The Jeep was destined for Hesperia, California.

17.     On August 12, 2020, the DEA Detroit Field Division contacted Milwaukee case agents regarding a telephone deconfliction. The Detroit agents had received information from a source of information (SOI) related to the seizure of the currency from the Jeep Cherokee in Wisconsin and a possible future shipment of currency from Milwaukee. The SOI provided Detroit agents with specific information that Jonte MARSHALL and Oscar RAMIREZ-RIVERA planned to ship a second vehicle from Milwaukee on August 13, 2020.  The SOI provided agents with the vehicle pickup location and a description of the vehicle.

18.     On August 13, 2020, Milwaukee case agents established surveillance at the vehicle pickup location, the same business owned by MARSHALL, located at 7836 North Faulkner Road, Milwaukee, Wisconsin.  At 8:36 a.m., case agents observed a white Ford Expedition parked in the rear of the building.  At 12:39 p.m., case agents observed the black Cadillac Escalade, bearing Wisconsin license plate AGE-3015, driven by MARSHALL, arrive at the business and park in the rear.  At 12:41 p.m., court-authorized positional information for (414) 779-1998 revealed that the phone was in close proximity to 7836 North Faulkner Road, Milwaukee, Wisconsin.  At 12:46 p.m., MARSHALL left the business northbound in the black Escalade. At 2:17 p.m., case agents observed a grey GMC Terrain, bearing Minnesota license plates DGA140, driven by a Hispanic male later identified as RAMIREZ-RIVERA arrive at the business and park in the rear.  These license plates list to PV Holding Corporation, 2240 Airport Lane, Minneapolis, Minnesota 55450.  PV Holding Corporation is a holding company for Avis and Budget rental cars.  An Administrative Subpoena later revealed this vehicle had been rented by Jonte MARSHALL.  At 2:19 p.m., court-authorized positional information for (602) 703-0618 revealed that the phone was in close proximity to 7836 North Faulkner Road, Milwaukee, Wisconsin.

19.     At 5:41 p.m., case agents observed a commercial car carrier arrive at the business and park in front on North Faulkner Road.  The company name "Gigi Line" was printed on the side of the truck. Shortly thereafter, RAMIREZ-RIVERA drove a white 2005 Ford Expedition, bearing Wisconsin license plates AFH-7134, from the rear of the business and turned the vehicle over to the driver of the car carrier.  These license plates list to Jonte MARSHALL at 1929 South 97th Street, West Allis, Wisconsin.  This vehicle matched the description of the vehicle previously provided by the Detroit SOI.  The driver loaded the Ford Expedition onto the car carrier while RAMIREZ-RIVERA watched.

20.     Agents conducted surveillance of the car carrier for approximately three hours as it picked up additional cars in West Bend, Wisconsin. After leaving that area, case agents followed the car carrier until it entered Interstate 94 toward Chicago, Illinois.  At 9:43 p.m., as the car carrier was in Racine, County, Wisconsin, a traffic stop was conducted by the Wisconsin State Patrol. During the traffic stop and inspection, a Racine County Sheriff Deputy deployed his K-9, which gave a positive alert to the odor of controlled substances in the Ford Expedition. During a search of the vehicle, case agents located a large amount of US Currency concealed in a natural void in the driver's side rear quarter panel.  An official count later determined that $100,020 had been seized from the vehicle.  The Ford Expedition was destined for Tolleson, Arizona.  Case agents are aware that RAMIREZ-RIVERA was believed to reside in Tolleson, Arizona at that time.

21.     Case agents believe both of these currency seizures represented payments by Jonte MARSHALL for drugs previously received and distributed by the MARSHALL DTO.  Case agents further believe that Oscar RAMIREZ-RIVERA travelled to Milwaukee to oversee the shipment of the drug proceeds to Arizona and California at the direction of the Sources of Supply for narcotics distributed by the MARSHALL DTO and that the Jeep contained payment for narcotics while the Ford Expedition represented RAMIREZ-RIVERA's payment for coordinating the distribution of narcotics and return of proceeds of drug trafficking.

22.     On June 13, 2021, at 10:27 p.m., a Kansas Highway Patrol Trooper was monitoring traffic on US Highway 54 in Seward County, Kansas.  The Trooper observed a 2022 Kenworth Semi Tractor, bearing Illinois license plate P1048444, towing a 2020 Sun Valley Car Carrier trailer, bearing Illinois license plate 717079ST, eastbound on US Highway 54.  The Trooper conducted a traffic stop of the car hauler for a commercial vehicle inspection.  Upon inspecting the vehicles on the car carrier, the Trooper located a white 2013 Nissan Cube that had been shipped from California and was destined for Milwaukee, Wisconsin.  A subsequent search of the Nissan Cube revealed

electronically controlled compartments beneath both of the vehicle's front floorboards. These compartments were found to contain 16 kilogram-shaped packages of a substance that tested positive for fentanyl and 14 packages of a substance that tested positive for cocaine. Case agents believe this fentanyl and cocaine were being transported to Milwaukee, Wisconsin to be distributed in the Eastern District of Wisconsin. Case agents removed the narcotics from the vehicle and arranged for the vehicle to be transported to Wisconsin.

23.    On June 14, 2021, the Honorable Nancy Joseph, United States Magistrate Judge in the Eastern District of Wisconsin, signed a search warrant authorizing the search of the AT&T cellular phone assigned phone number (213) 379-2357. This phone had been utilized to arrange the shipment of the Nissan Cube. On June 16, 2021, at 7:45 a.m., court-authorized positional information for (213) 379-2357 showed that the phone was in close proximity to The Chalet Motel of Mequon at 10401 North Port Washington Road, Mequon, Wisconsin. Case agents responded to that location and observed a black 2016 Nissan Juke, bearing California license plates 8ROZ059.

24.    On June 16, 2021, case agents met with the driver of the commercial car carrier in the Eastern District of Wisconsin. The concealed compartments in the Nissan Cube were filled with facsimile kilogram-shaped packages similar to those seized in Kansas. The Nissan Cube was equipped with tracking devices and an alarm which would alert case agents when the concealed compartments were opened. Case agents then conducted a controlled delivery of the Nissan Cube to its delivery destination.

25.    After the car carrier arrived at the delivery location, the driver contacted (213) 379-2357 via text message and advised that the vehicle had arrived. The user of (213) 379-2357 stated his "friend" would arrive shortly. Case agents observed three Hispanic males walk across the Chalet Motel parking lot and enter the Nissan Juke. These subjects were later identified as Daniel RODRIGUEZ-LARA, Richard CHAVEZ, and Humberto CORONEL-VEGA. The Nissan Juke,

driven by CHAVEZ, was followed from the motel and eventually arrived at the delivery location. Daniel RODRIGUEZ-LARA exited the Nissan Juke and received the Nissan Cube from the truck driver. RODRIGUEZ-LARA drove to a nearby Walmart and parked the Cube in the parking lot. He then entered the Nissan Juke and the vehicle drove out of the area.

26.     Case agents maintained surveillance of the Nissan Juke, CHAVEZ, RODRIGUEZ-LARA, and CORONEL-VEGA, for approximately six hours at which time case agents lost sight of the vehicle and surveillance was terminated. Case agents maintained constant visual surveillance of the Nissan Cube and no one returned to the vehicle. On June 16, 2021, at approximately 10:15 p.m., case agents maintaining surveillance of the Nissan Cube at Walmart observed a Yellow Cab taxi pull into the parking lot and stop near the Cube. RODRIGUEZ-LARA exited the taxi and entered the driver's seat of the Cube. Case agents followed the Cube to Rick's Car Care, 6121 West Mequon Road, Mequon, Wisconsin. RODRIGUEZ-LARA parked the vehicle in the parking lot and re-entered the same taxi, which had also arrived at the location. The taxi was followed to the Days Inn & Suites, 1840 North 6th Street, Milwaukee, Wisconsin. RODRIGUEZ-LARA exited the taxi and entered the hotel. Approximately 10 minutes later, RODRIGUEZ-LARA exited the hotel with CORONEL-VEGA. They walked around the neighborhood for approximately 15 minutes before returning to the hotel. Surveillance video later showed RODRIGUEZ-LARA and CORONEL-VEGA depart the hotel on June 17, 2021, at 12:12 a.m.

27.     At approximately 12:50 a.m., case agents observed a 2006 Range Rover, bearing California license plates 6NNH477, enter the parking lot of Rick's Car Care. Case agents observed two subjects enter the Nissan Cube and drive the vehicle out of the area. The vehicle was followed to North River Road south of Mequon Road where it pulled to the side of the road. Case agents received an alert that the concealed compartments inside the Cube had been opened. Case agents attempted to conduct a traffic stop of the Cube at which time the vehicle struck a law enforcement

vehicle and fled at a high rate of speed. Eventually, the Cube crashed at the intersection of West County Line Road and North Wakefield Court, Bayside, Wisconsin. Both occupants of the vehicle fled and evaded capture. Case agents believe, based on the investigation to date, that CORONEL-VEGA was the driver of the Cube and Daniel RODRIGUEZ-LARA was the front passenger. A search of the vehicle revealed a pillow case on the floor of the backseat which contained 14 of the facsimile kilogram-shaped packages that were previously hidden in the concealed compartment underneath the front passenger seat. Case agents subsequently arrested Richard CHAVEZ and Daniel RODRIGUEZ-LARA.

28.     On June 22. 2021, a Grand Jury in the Eastern District of Wisconsin returned a true bill charging RODRIGUEZ-LARA and CHAVEZ with Conspiracy to Distribute Controlled Substances and Attempted Possession with the Intent to Distribute 5 kilograms or more of cocaine and 400 grams or more of fentanyl. CORONEL-VEGA continues to be sought.

29.     On June 29, 2021, case agents interviewed Richard CHAVEZ pursuant to a proffer letter. CHAVEZ stated that he was involved in the shipment of the Nissan Cube from California to Wisconsin. CHAVEZ further stated that RODRIGUEZ-LARA and CORONEL-VEGA also travelled from California to Wisconsin to assist in the delivery of the Nissan Cube. CHAVEZ stated the fentanyl and cocaine in the vehicle were destined for a subject CHAVEZ knows as "Jon" who lives in Mequon, Wisconsin. CHAVEZ described "Jon" as an African-American male 45-50 years old. CHAVEZ identified a photo of Jonte MARSHALL as the subject CHAVEZ knows as "Jon." CHAVEZ also described the location of MARSHALL's residence and pointed out the location on a map. The location identified by CHAVEZ was 8320 West Mourning Dove Court, Mequon, Wisconsin. Case agents are aware this is the residence of Jonte MARSHALL. CHAVEZ stated that within the last year he had arranged the delivery of over 100 kilograms of fentanyl from California to Jonte MARSHALL in Wisconsin. CHAVEZ further stated that MARSHALL had

shipped in excess of $3,000,000 in bulk United States currency from Wisconsin to California in the last year as payment for fentanyl received by the MARSHALL DTO.

30.     CHAVEZ also provided case agents with the phone number used by MARSHALL to coordinate the delivery of the fentanyl and cocaine seized in Kansas.  Court-authorized positional information for that phone showed the phone travelled in tandem with the known phone used by MARSHALL for several days surrounding the expected delivery of the fentanyl and cocaine.  Case agents believe this indicates that MARSHALL was carrying the phone during that time period.  Case agents believe this further corroborates CHAVEZ's statement that Jonte MARSHALL was the intended recipient of the fentanyl and cocaine.  CHAVEZ further identified Jose AISPURO-NIEBLA and Juan AISPURO-NIEBLA as the subjects responsible for arranging prior shipments of fentanyl to MARSHALL and for arranging the shipment of fentanyl and cocaine which was seized in Kansas.

31.     On July 22, 2022, at 1:01 p.m., court-authorized positional information for (414) 779-1998 indicated the phone was in close proximity to North Mayfair Road and West North Avenue, Wauwatosa, Wisconsin.   A case agent responded to that area in an attempt to locate Jonte MARSHALL.  At 1:31 p.m., the case agent located MARSHALL's white 2021 Cadillac Escalade, bearing Wisconsin license plate AND-5667, parked in the parking lot of Best Buy, 2401 North Mayfair Road, Wauwatosa, Wisconsin.  These license plates list to Schweiger and Baumann and Jonte MARSHALL.  The case agent established surveillance of the vehicle.

32.     At 1:49 p.m., the case agent observed Jonte MARSHALL walk from the entrance of Best Buy toward the Escalade.   MARSHALL was accompanied by two Hispanic males. MARSHALL entered the driver's seat and the two males entered the front and rear seats on the passenger side.  MARSHALL drove the vehicle out of the parking lot and drove across the street into the parking lot of Mayfair Mall.  The case agent temporarily lost sight of the vehicle at 1:54

p.m.  At 1:59 p.m., the case agent located the Escalade driving east in a parking aisle just south of the Tokyo Hut restaurant.  The Escalade then drove north in the parking lot and parked near a mall entrance just north of Potbelly Sandwich Shop.  The case agent again lost sight of the vehicle temporarily.  When visual surveillance was re-established, the vehicle was unoccupied.

33.     On August 18, 2022, the case agent obtained surveillance video from Best Buy from July 22, 2022.  The video shows MARSHALL and the two Hispanic males enter the store at 12:43 p.m.  MARSHALL and the two males did no actual shopping while inside the store.  They walked to an area of the store where they had conversation for several minutes.  One of the Hispanic males appeared to be translating for the other.  Whenever a customer or Best Buy employee came near MARSHALL and the males, they would relocate to a different part of the store and continue their conversation.  This happened several times for approximately one hour.  Case agents believe, based on the investigation to date and several nonverbal indicators observed on the surveillance, that MARSHALL and the males were involved in a negotiation.  Case agents believe this negotiation involved the drug trafficking and money laundering activities of the MARSHALL DTO.  MARSHALL and the males left the store at 1:48 p.m. and were observed driving back to the Mayfair Mall parking lot in MARSHALL's Cadillac.  On September 15, 2022, case agents showed still photos from the Best Buy surveillance video to a Richard CHAVEZ who identified one of the males who met with MARSHALL as Jose AISPURO-NIEBLA, the subject who arranged the shipment of fentanyl and cocaine to MARSHALL which was seized in Kansas.  Case agents believe the fact that MARSHALL was observed meeting with AISPURO-NIEBLA in the Milwaukee area in July 2022 indicates that MARSHALL is still involved in narcotics trafficking with AISPURO-NIEBLA.

34.     On October 31, 2022, the Honorable Stephen Dries, United States Magistrate Judge in the Eastern District of Wisconsin, signed search warrants authorizing the search of several locations associated with the Jonte MARSHALL DTO.  These locations included MARSHALL's

residence at 8320 W. Mourning Dove Ct., Mequon, WI; 11946 W. Mill Rd., #25, Milwaukee, WI; and Safe Deposit Box # 2313 at Educator's Credit Union, 10811 W Park Place, Milwaukee, WI.

35.     During a search of 8320 W. Mourning Dove Ct., Mequon, WI, MARSHALL was located in the residence and was taken into custody.  Two handguns were recovered from the residence.  Several items of expensive jewelry were also located in the residence and were seized as being proceeds of drug trafficking.  MARSHALL's 2021 Cadillac Escalade, valued at more than $100,000 was also located at the residence and seized.

36.     During a search of 11946 W. Mill Rd. #25, Milwaukee, WI, case agents located approximately 19 kilograms of a substance that tested positive for fentanyl, in excess of two kilograms of a substance that tested positive for cocaine, approximately $80,000 in bulk United States currency, several expensive jewelry items, and paraphernalia associated with the distribution of fentanyl and cocaine.  Two vehicles were located in the underground garage at this location, a Honda Civic and a Nissan Juke.  Prior investigation indicated that the Juke was believed to contain concealed compartments beneath the front driver and passenger seats. An examination of the Honda revealed similar concealed compartments.   A search of the Nissan Juke revealed the hidden compartments.  The compartment beneath the front passenger seat contained a large amount of United States currency wrapped in rubber bands and encased in vacuum-sealed packaging.  This amount of currency is estimated to be in excess of $500,000.

37.     During a search of Safe Deposit Box # 2313 at Educator's Credit Union, 10811 W Park Place, Milwaukee, WI, case agents located approximately $80,000 in bulk United States currency wrapped in rubber bands.

**Jonte MARSHALL's use of Wells Fargo Bank, Account # 9996562899**

**to Facilitate Drug Trafficking and Money Laundering**

38.     According to records from **Wells Fargo Bank, Account # 9996562899** is held in the name of **BLACKOUT INVESTMENTS LLC**.  MARSHALL is the sole signor on the account. Account statements as recent as May 31, 2022, list an address of 1929 South 97th Street, West Allis, Wisconsin.  Case agents reviewed the account records and found that:

a.      MARSHALL made cash deposits of $178,435.00 and $148,380.00 in 2020 and 2021 respectively.   Most deposits were even dollar amounts of either $3,000.00, $4,000.00, $6,000.00, or $8,000.00.   Many of the deposits were conducted in a fashion consistent with structuring of currency transactions to evade the bank's $10,000.00 cash transaction reporting requirement.  Most of the deposited funds were then transferred to Wells Fargo Bank Account x3386 which is a personal account held solely by MARSHALL; and

b.      On May 7, 2020, MARSHALL deposited two $5,000.00 money orders purchased from Community Financial Service Center, a Milwaukee area money service business.  Information obtained from Community Financial Service Center revealed that Lemonda WARD purchased both money orders on May 6, 2020.  The money orders were purchased at different store locations.  The first was purchased at 11:57 a.m. and the second was purchased at 12:27 p.m.  These funds, along with funds made available by cash deposits to **Wells Fargo Bank Account # 9996562899, in the name of Blackout Investments LLC,** of $8,000.00 on May 11, 2020, $8,000.00 on May 12, 2022, and $6,000.00 on May 13, 2022, were used to fund a $25,391.00 wire on May 14, 2022, to Merit Title.  The purpose of the wire was for

MARSHALL's purchase of a single-family residence at 3783 North 62nd Street, Milwaukee, Wisconsin.

**Facts Supporting a Finding that Wells Fargo Bank Account # 9996562899, in the name of Blackout Investments LLC, Contains Proceeds Derived from Trafficking in Fentanyl and Cocaine**

39.     My experience in investigating this and other cases involving the sale of illicit drugs, including fentanyl and cocaine, reveals generally that manufacturers and distributors of illegal drugs typically have substantial profit margins on the sale of, and earn substantial amounts of profits from, the sale of illegal drugs.

40.     Based on my training and experience, I know the following:

a.      Individuals involved in illegal sales of controlled substances or other unlawful activities often generate large amounts of criminal proceeds; and

b.      Individuals involved in the manufacture, distribution, and sale of illegal products, such as narcotics, often utilize a large amount of cash transactions to conduct business in an attempt to avoid detection and to finance their on-going business operations.

41.     Therefore, I submit that **Wells Fargo Bank, Account # 9996562899 in the name of Blackout Investments LLC**, represent proceeds of Jonte MARSHALL's illegal drug sales, based on the following summary of the evidence detailed above:

a.      Case agents conducted eleven controlled buys of fentanyl from members of the Jonte MARSHALL DTO from April 2019 until November 2020;

b.      In August 2020, case agents seized $608,160 in bulk United States currency being sent from Milwaukee, Wisconsin to Arizona and California which case agents believe represented proceeds of drug trafficking;

c.      In June 2021, case agents seized approximately 16 kilograms of fentanyl and 14 kilograms of cocaine being shipped to the Jonte MARSHALL DTO in Wisconsin. Richard CHAVEZ identified Jonte MARSHALL as the intended recipient of the fentanyl and cocaine;

d.      On November 9, 2022, case agents executed search warrants at several locations associated with the Jonte MARSHALL DTO which resulted in the arrest of MARSHALL and the seizure of over 19 kilograms of suspected fentanyl, over two kilograms of suspected cocaine, six firearms, an estimated $600,000 to $900,000 in bulk United States currency, two vehicles containing concealed compartments used to transport drugs and currency across the United States, and large amounts of paraphernalia used to package and prepare fentanyl and cocaine for distribution, and

e.      A review of bank records for **Wells Fargo Bank, Account # 9996562899 in the name of Blackout Investments LLC**, revealed that the account did not contain transactions associated with a legitimate investment business, but rather was used to make deposits devised to evade reporting requirements of the Bank Secrecy Act and to facilitate the drug trafficking and money laundering activities of the MARSHALL DTO.

**Conclusion**

42.      Based on the foregoing, I submit that there exists probable cause to believe that the entire contents of **Wells Fargo Bank, Account # 9996562899, in the name of Blackout Investments LLC,** currently in excess of $74,000, represents proceeds derived from Jonte MARSHALL's sale of fentanyl and cocaine. The funds constitute proceeds of trafficking in controlled substances or were used or intended to be used to facilitate the commission of a controlled substances offense, in violation of 21 U.S.C. § 841(a)(1), and therefore are:

a.      Subject to criminal and civil forfeiture under 21 U.S.C. §§ 853(a) and 881(a)(6), respectively; and

b.      Subject to seizure for purposes of civil forfeiture under 18 U.S.C. § 981(b) and 21 U.S.C. § 881(b) and for purposes of criminal forfeiture under 21 U.S.C. § 853(f).

43.      For these reasons, I respectfully request that the Court issue a warrant authorizing the seizure of **Wells Fargo Bank, Account # 9996562899, in the name of Blackout Investments LLC**, and the transfer of the funds to the Drug Enforcement Administration and/or the United States Marshals Service.